400 S.E.2d 561

**Jeffrey W. STEMPLE and
Judith E. Stemple**

v.

**Lewis M. DOBSON, Carol Y. Dobson,
and Ace Exterminators, Inc., a West
Virginia Corporation.**

No. 19559.

Supreme Court of Appeals of
West Virginia.

Dec. 12, 1990.

318

James H. McCauley, McCauley, Webster & Emrick, Belpre, Ohio, for Jeffrey W. Stemple, Judith E. Stemple.

David G. Palmer, Parkersburg, for Lewis M. Dobson, Carol Y. Dobson.

Larry N. Sullivan, Parkersburg, for Ace Exterminators, Inc.

MILLER, Justice:

This is an appeal by the plaintiffs below, Jeffrey W. Stemple and Judith E. Stemple, from an adverse summary judgment ruling by the Circuit Court of Wood County in an action to recover for damage to their home due to termite activity. The plaintiffs brought suit against the former owners of the house, Lewis M. Dobson and Carol Y. Dobson, on grounds of breach of contract and fraudulent concealment. The plaintiffs also sued Ace Exterminators, Inc. (Ace) for negligently failing to discover the damage. The circuit court ruled that the actions were not maintainable as a matter of law. We disagree, and we reverse the judgment of the circuit court and remand the case for further proceedings.

I.

On October 8, 1985, the plaintiffs entered into a contract to purchase a house in Vienna, Wood County, from the Dobsons. The contract provided that the plaintiffs were purchasing the dwelling "as is," based upon their own examination of the premises rather than upon any representations of the Dobsons.[1]

The contract also required the Dobsons to furnish a written termite inspection report, a condition apparently inserted at the insistence of Magnet Mortgages, Inc., the lending institution financing the purchase. At the Dobsons' request, Ace conducted an inspection of the premises on October 7, 1985, and furnished the plaintiffs with a written report on October 9, 1985. The report stated that there was evidence of a previous termite infestation, now inactive, and that no evidence of structural damage had been observed. The report also contained a disclaimer expressly advising consumers that it was not intended as a structural damage report. However, the report did not emphasize the disclaimer[2] and spe-

---

1. The provisions of the contract stated:
   "Purchaser acknowledges that Purchaser has inspected said premises and knows the condition thereof, and is purchasing the same premises 'as is' and hereby waives any and all claims on account of any encroachments on the premises herein described or on any premises adjacent thereto....
   "Purchaser acknowledges that purchaser is purchasing the property after purchaser's own examination and judgment and not through any representations to purchaser made by seller, or seller's agents, any real estate broker or real estate salesman, as to its location, utility services, value, future value or income therefrom."

2. In the section of the report entitled "STATEMENT OF PEST CONTROL OPERATOR," the following statements appeared:
   "A. The inspection covered the readily accessible areas of the property, including attics

cifically stated elsewhere that the inspector had observed no structural damage.

The closing occurred on November 18, 1985, and the plaintiffs took possession of the dwelling on December 8, 1985. Not long thereafter, Mrs. Stemple noticed flying insects in the house. The plaintiffs called another exterminator, Bruce–Terminix Service, Inc. (Terminix), which inspected the home on January 22, 1986. The inspector told the plaintiffs that there were carpenter ants living in the old termite tunnels and noted some termite damage to the exterior perimeter of the house due to the prior infestation. The plaintiffs, however, testified that the inspector told them the damage was not serious and there was nothing to worry about in that regard. Moreover, the Terminix inspector made no notation of visible damage in the appropriate place on the inspection report. The plaintiffs purchased a termite protection plan from Terminix and subsequently made $3,300 in improvements to the house.

On February 23, 1988, another termite inspection was conducted by Eastern Burkholder Exterminating Service (Burkholder). In the basement, the inspector discovered substantial structural damage due to the prior termite infestation. It was subsequently estimated that correction of the damage would require raising the house on jacks and replacing the structure's main beam, seal plate, box sill, siding, and subfloor. The Burkholder inspector estimated that the damage was as much as twenty

years old, but could not have occurred within the previous three years.

The plaintiffs subsequently contacted Craig Bandy, who had owned the home before the Dobsons. Mr. Bandy reported that there had been visible termite damage to the floor joists when he purchased the house in 1977. After examining the premises with the plaintiffs, Mr. Bandy further stated that several of the damaged timbers, in place when he sold the house to the Dobsons in 1982, had been replaced and stained to match the old wood.

On April 7, 1988, the plaintiffs filed suit in the Circuit Court of Wood County against the Dobsons and Ace.[3] The complaint charged the Dobsons with breach of contract and with willfully and fraudulently concealing from the plaintiffs the structural damage caused by the prior termite infestation. The plaintiffs also charged Ace with negligence in failing to discover the damage in the course of its termite inspection.

Prior to trial, the defendants filed motions for summary judgment with the circuit court. They asserted that the plaintiffs' negligence and fraud claims were barred by the statute of limitations. It was also asserted that the "as is" clause in the contract of sale precluded the plaintiffs from pursuing their claims against the Dobsons. The lower court apparently agreed and, by order dated January 4, 1990, granted the motions.[4] It is from this order that the plaintiffs now appeal.

and crawl spaces which permit entry. Special attention was given to those accessible areas which experience has shown to be particularly susceptible to attack by wood destroying insects. Probing and/or sounding of those areas and other visible accessible wood members showing evidence of infestation was performed.
"B. The inspection did not include areas which were obstructed or inaccessible at the time of inspection....
"C. This is not a structural damage report. Neither is this a warranty as to absence of wood destroying insects.
"D. Neither I nor the company for which I am acting have had, presently have, or contemplate having any interest in the property. I do further state that neither I nor the company for which I am acting is associated in any way with any party to this transaction."

Items A and D were circled. Items B and C were not.

3. The plaintiffs also brought suit against Terminix, against Magnet Mortgages, Inc., and against Jon Bango, the appraiser who examined the house prior to closing. The claims against these parties were subsequently settled, and they have since been dismissed from the action.

4. In a letter to the parties dated November 27, 1989, the circuit court stated:
"In view of the facts that the written contract was expressly an 'as is' sale, that the applicable statute of limitations had expired before the action was commenced and that the plaintiffs had a great deal of information about the claimed defects at the time of purchase and soon thereafter, it is the considered

## II.

■ At issue here is the correctness of the trial court's summary judgment ruling. In Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), we stated the standard for determining the appropriateness of summary judgment under Rule 56(c) of the West Virginia Rules of Civil Procedure:

"A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." [5]

In Syllabus Point 6 of *Aetna*, we also stated:

"A party who moves for summary judgment has the burden of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved against the movant for such judgment."

*See Prudential Ins. Co. of Am. v. Couch*, 180 W.Va. 210, 376 S.E.2d 104 (1988); *Hoskins v. C & P Tel. Co.*, 169 W.Va. 397, 287 S.E.2d 513 (1982); *Karnell v. Nutting*, 166 W.Va. 269, 273 S.E.2d 93 (1980); *Anderson v. Turner*, 155 W.Va. 283, 184 S.E.2d 304 (1971). As we held in Syllabus Point 1 of *Masinter v. WEBCO Co.*, 164 W.Va. 241, 262 S.E.2d 433 (1980): "Even if the trial judge is of the opinion to direct a verdict, he should nevertheless ordinarily hear evidence and, upon a trial, direct a verdict rather than try the case in advance on a motion for summary judgment." *See Dawson v. Woodson*, 180 W.Va. 307, 376 S.E.2d 321 (1988); *Truman v. Farmers & Merchants Bank*, 180 W.Va. 133, 375 S.E.2d 765 (1988); *Romano v. New England Mut. Life Ins. Co.*, 178 W.Va. 523, 362 S.E.2d 334 (1987); *Brown v. Bluefield Mun. Bldg. Comm'n*, 167 W.Va. 318, 280 S.E.2d 101 (1981); *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981).

## III.

The first contention on appeal is that the plaintiffs' fraud claim against the Dobsons and their negligence claim against Ace were barred by the statute of limitations. W.Va.Code, 55-2-12 (1959), provides that personal actions for damage to property or personal injury for which no other limitations period is prescribed must be brought within "two years next after the right to bring the same shall have accrued." [6]

■ We have held in a variety of cases that a right of action does not "accrue" for purposes of the statute of limitations until the plaintiffs knew or should have known by the exercise of reasonable diligence of the nature of their claims. In Syllabus Point 1 of *Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988), we stated:

"The two year statute of limitation for a tort action arising from latent defects in the construction of a house begins to run when the injured parties knew, or by the exercise of reasonable diligence should have known, of the nature of their injury and its sources, and deter-

---

opinion of the court that there is no genuine issue of fact to be determined herein and that the motions must be granted."
This letter was incorporated by reference into the circuit court's final order of January 4, 1990.

**5.** W.Va.R.Civ.P. 56(c) provides, in pertinent part: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

**6.** W.Va.Code, 55-2-12, provides:
"Every personal action for which no limitation is otherwise prescribed shall be brought:

(a) Within two years next after the right to bring the same shall have accrued, if it be for damages to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative."
The parties agree that this limitation period is the appropriate one in this case. *See Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988); *Stanley v. Sewell Coal Co.*, 169 W.Va. 72, 285 S.E.2d 679 (1981); *Snodgrass v. Sisson's Mobile Home Sales, Inc.*, 161 W.Va. 588, 244 S.E.2d 321 (1978).

mining that point in time is a question of fact to be answered by the jury."

We have applied this discovery rule in various tort cases. *E.g., Hickman v. Grover,* 178 W.Va. 249, 358 S.E.2d 810 (1987); *Family Sav. & Loan, Inc. v. Ciccarello,* 157 W.Va. 983, 207 S.E.2d 157 (1974); *Morgan v. Grace Hosp., Inc.,* 149 W.Va. 783, 144 S.E.2d 156 (1965). We have also recognized its applicability to cases of fraud or fraudulent concealment. *E.g., Hundley v. Martinez,* 151 W.Va. 977, 158 S.E.2d 159 (1967); *Baker v. Hendrix,* 126 W.Va. 37, 27 S.E.2d 275 (1943); *Plant v. Humphries,* 66 W.Va. 88, 66 S.E. 94 (1909). *See also Harless v. Western & S. Life Ins. Co.,* 119 W.Va. 102, 192 S.E. 137 (1937); *Petrelli v. West Virginia–Pittsburgh Coal Co.,* 86 W.Va. 607, 104 S.E. 103 (1920). It is generally recognized that the issue presents a question of fact to be resolved by the jury. *Alpine Property Owners Ass'n, Inc. v. Mountaintop Dev. Co.,* 179 W.Va. 12, 20 n. 14, 365 S.E.2d 57, 65 n. 14 (1987); *Harrison v. Seltzer,* 165 W.Va. 366, 268 S.E.2d 312 (1980); *Hill v. Clarke,* 161 W.Va. 258, 241 S.E.2d 572 (1978); *Hundley v. Martinez, supra. See also Nellas v. Loucas,* 156 W.Va. 77, 191 S.E.2d 160 (1972).

Accordingly, we conclude that where a cause of action is based on tort or on a claim of fraud, the statute of limitations does not begin to run until the injured person knows, or by the exercise of reasonable diligence should know, of the nature of his injury, and determining that point in time is a question of fact to be answered by the jury. The parties agree that the question in this case is whether the plaintiffs became aware of or should have discovered that there was substantial termite damage to the home more than two years prior to the institution of this action in the circuit court on April 7, 1988.

### A.

The defendants initially assert that this question was answered by the allegations in the complaint that the plaintiffs "moved into the real estate on or about December 10, 1985, and *thereafter soon discovered evidence of* wood destroying insect *structural damages....*" (Emphasis added). In reliance on *Harless v. First National Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978), and *John W. Lodge Distributing Co. v. Texaco, Inc.,* 161 W.Va. 603, 245 S.E.2d 157 (1978), the defendants contend that these allegations must be taken as true, foreclosing any further inquiry into the issue, and conclusively prove that suit was not filed within the limitations period.

■ First, we note that *Harless* and *Texaco* involved motions to dismiss under Rule 12(b) of the Rules of Civil Procedure, the purpose of which is to test the sufficiency of the complaint. *See Chapman v. Kane Transfer Co.,* 160 W.Va. 530, 236 S.E.2d 207 (1977). Accordingly, only matters contained in the pleadings may be considered in conjunction with such a motion. *Dunn v. Consolidation Coal Co.,* 180 W.Va. 681, 379 S.E.2d 485 (1989); *United States Fidelity & Guar. Co. v. Eades,* 150 W.Va. 238, 144 S.E.2d 703 (1965). Here, however, the defendants did not challenge the sufficiency of the complaint by Rule 12(b) motions to dismiss, but instead, moved for summary judgment. A motion for summary judgment is decided upon "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any[.]" W.Va.R.Civ.P. 56(c). *See Haga v. King Coal Chevrolet Co.,* 151 W.Va. 125, 150 S.E.2d 599 (1966); *Aetna Casualty & Sur. Co. v. Federal Ins. Co. of N.Y., supra.*

■ Secondly, we do not believe that the allegation in the plaintiffs' complaint amounts to an admission that the plaintiffs discovered the structural damage more than two years before commencing suit, as the defendants contend. That portion of the complaint is vague, stating only that the plaintiffs discovered evidence of structural damage "soon" after moving into the house. The discovery material demonstrates that the date is essentially a question of fact.

The defendants contend that the plaintiffs knew or should have known of struc-

tural damage to the house following the Terminix inspection on January 22, 1986, at the very latest. The defendants argue that because the plaintiffs, aware of the prior infestation and of some resulting damage to the structure, failed to investigate the extent of the damage, this action, filed more than two years after the Terminix inspection, is barred by the provisions of W.Va. Code, 55–2–12.

The plaintiffs assert that it is possible for a building to remain structurally sound after a termite infestation and that no reasonable person would have suspected further damage after having been assured by both the Ace and Terminix inspectors that the house had suffered no structural damage as a result of the prior infestation. The plaintiffs further contend that the Dobsons attempted to cover up severe, visible termite damage so as to make the house appear damage free to the untrained eye and that they were not aware of the extensive damage necessitating major repairs until the Burkholder inspection on February 23, 1988, only two months before this action was commenced.

Clearly, reasonable persons could draw different conclusions from these facts. In Syllabus Point 2 of *Floyd v. Equitable Life Assurance Society*, 164 W.Va. 661, 264 S.E.2d 648 (1980), we stated: "A motion for summary judgment must be denied if varying inferences may be drawn from evidence accepted as true." *Accord Aetna Casualty & Sur. Co. v. Federal Ins. Co. of N.Y.*, *supra*. Because there is a material question of fact with regard to when the plaintiffs' right of action accrued so as to commence the running of the statute of limitations, the matter was clearly a question for the jury. *See Alpine Property Owners Ass'n, Inc. v. Mountaintop Dev. Co.*, *supra; Renner v. Asli*, 167 W.Va. 532, 280 S.E.2d 240 (1981). Accordingly, we conclude that the circuit court erred in granting the defendants' motions for summary judgment on the ground that the fraud and negligence actions were barred by the statute of limitations.

## IV.

The plaintiffs also contend that the trial court erred in granting summary judgment based on the "as is" clause in the contract of sale. It is generally recognized that an "as is" sale does not extinguish a cause of action for fraud. *See* Annot., 97 A.L.R.2d 849 (1964).

In *Thacker v. Tyree*, 171 W.Va. 110, 297 S.E.2d 885 (1982), the purchasers of a home alleged that the vendors had fraudulently concealed latent defects in the dwelling. We made this summary of the law: "[W]here the vendor has knowledge of concealed or latent conditions that are not within the knowledge of the purchaser or could not be discovered by reasonable diligence, there is a duty to disclose and the failure to do so will constitute evidence of fraud." 171 W.Va. at 113, 297 S.E.2d 887–88. (Citations omitted). *See Chamberlaine & Flowers, Inc. v. McBee*, 177 W.Va. 755, 356 S.E.2d 626 (1987). In other jurisdictions this rule has been applied to a vendor's failure to disclose termite infestations or preexisting termite damage. *E.g.*, *Hill v. Jones*, 151 Ariz. 81, 725 P.2d 1115 (App.1986); *Rayner v. Wise Realty Co.*, 504 So.2d 1361 (Fla.App.1987); *Mercer v. Woodard*, 166 Ga.App. 119, 303 S.E.2d 475 (1983); *Williams v. Benson*, 3 Mich.App. 9, 141 N.W.2d 650 (1966); *MacFarlane v. Manly*, 274 S.C. 392, 264 S.E.2d 838 (1980); *Cohen v. Blessing*, 259 S.C. 400, 192 S.E.2d 204 (1972); *Obde v. Schlemeyer*, 56 Wash.2d 449, 353 P.2d 672 (1960).

The Supreme Court of South Carolina in *MacFarlane*, 274 S.C. at 395, 264 S.E.2d at 840, summarized the "as is" rule in fraudulent concealment sales:

"The 'as is' clause of the contract does not constitute an absolute defense to an action for fraud and deceit. The inclusion of 'as is' clauses is usually an effort on the part of the seller to assure application of the *caveat emptor* rule. In *Lawson v. Citizens and Southern Nat. Bank of S.C.*, 259 S.C. 477, 193 S.E.2d 124 (1972), we said: '... the doctrine of

caveat emptor does not apply in cases of fraud.' " [7]

■ We therefore conclude that the existence of an "as is" clause in a contract of sale for real estate will not relieve the vendor of his obligation to disclose a condition which substantially affects the value or habitability of the property and which condition is known to the vendor, but not to the purchaser, and would not be disclosed by a reasonable and diligent inspection. Such failure to disclose constitutes fraud.

■ Here, the plaintiffs allege a claim of fraud against the Dobsons, asserting that their fraudulent concealment of the extent of the termite damage induced the plaintiffs to purchase the house. Moreover, the plaintiffs claim that reasonable and diligent inspections by two termite companies did not disclose the damage. Thus, they contend, at the very least, that factual questions as to their right to maintain their claim against the Dobsons were at issue. As we have already indicated, the facts presented to the circuit court are such that reasonable persons can draw different conclusions as to the claim of fraud. Accordingly, the question was for the jury, and the circuit court was clearly wrong in granting summary judgment on that point.

### V.

For the reasons stated above, we conclude that the trial court's summary judgment ruling was incorrect. We therefore reverse the judgment of the Circuit Court of Wood County and remand this case for further proceedings.

Reversed and remanded.

---

**7.** In *Thacker v. Tyree, supra,* we essentially abolished the doctrine of *caveat emptor* in residential real estate sales.